ORIGINAL

Approved: _Madison Reddick Smyser_
MADISON REDDICK SMYSER
Assistant United States Attorney

DOC #

Before:   THE HONORABLE JENNIFER E. WILLIS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA              :      22 Mag. **7122**
                                      :
        - v. -                        :      RULE 5(c)(3)
                                      :      AFFIDAVIT
GLENN LAKEN,                          :
                                      :
                Defendant.            :
                                      :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss:

        ZACHARY WILLIAMS, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of
Investigation ("FBI"), and charges as follows:

        On or about August 10, 2022, the United States
District Court for the Northern District of Georgia issued a
warrant for the arrest of "Glenn Laken" based on an indictment
charging conspiracy to commit wire fraud, in violation of 18
U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. §§ 1343 and
2; conspiracy to commit securities fraud, in violation of 18
U.S.C. § 371; and securities fraud, in violation of 15 U.S.C.
§§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.
Copies of the indictment and arrest warrant are attached hereto
as Exhibits A and B respectively and incorporated by reference
herein.

        I believe that GLENN LAKEN, the defendant, who was
arrested on August 30, 2022, in the Southern District of New
York, is the same person as the "Glenn Laken" who is wanted by
the United States District Court for the Northern District of
Georgia.

The bases for my knowledge and for the foregoing charge are, in part, as follows:

1.    I am a Special Agent with the FBI. I have been personally involved in determining whether GLENN LAKEN, the defendant, is the same individual as the "Glenn Laken" named in the August 10, 2022 arrest warrant from the United States District Court for the Northern District of Georgia. Because this Affidavit is being submitted for the limited purpose of establishing the identity of the defendant, I have not included in this Affidavit each and every fact that I have learned. Where I report statements made by others, those statements are described in substance and in part, unless otherwise noted.

2.    Based on my review of documents from the United States District Court for the Northern District of Georgia, I know that, on or about August 10, 2022, the United States District Court for the Northern District of Georgia issued a warrant for the arrest of "Glenn Laken" (the "Arrest Warrant"). The Arrest Warrant was based on an indictment (the "Indictment") charging "Glenn Laken" with violations of 18 U.S.C. §§ 1349, 1343, 2, and 371; 15 U.S.C. § 78j; and 17 C.F.R. § 240.10b-5.

3.    On or about August 30, 2022, at approximately 9:20 a.m., GLENN LAKEN, the defendant, self-surrendered to an FBI office in New York, New York. The FBI placed LAKEN under arrest. Based on my conversations with LAKEN and my participation in his arrest, I have learned the following:

a.    At the FBI office, LAKEN indicated that his name is "Glenn Laken."

b.    Based on my conversations with an FBI agent who is investigating this case and my review of information from a law enforcement database, I learned the social security number, date of birth, and address for "Glenn Laken." Upon his self-surrender, LAKEN confirmed that he has the same social security number, date of birth, and address.

c.    At the time of his self-surrender, LAKEN had in his possession a driver's license issued by the State of Illinois bearing the name, "Glenn Laken."

d.    During the course of the investigation, I reviewed a Department of Motor Vehicles photograph of the "Glenn Laken" sought in the arrest warrant. Based on my comparison of the photograph from the Department of Motor Vehicles with the

2

photograph on LAKEN's driver's license and my observations of LAKEN, I have determined they are the same person.

4.      Accordingly, I believe that the "Glenn Laken" sought in the Arrest Warrant is the defendant, GLENN LAKEN.

WHEREFORE, I respectfully request that GLENN LAKEN, the defendant, be imprisoned or bailed as the case may be.

_Zachary Williams_
ZACHARY WILLIAMS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
30th day of August, 2022.

THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York

3

# EXHIBIT A

FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 09 2022

KEVIN P. WEIMER, Clerk
By:   ᑕᑭᵐDeputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

$v.$

RAHIM MOHAMED,
RICHARD TANG,
DAVIES WONG,
BREANNE WONG,
PHILLIP SEWELL,
ZOLTAN NAGY,
CHRISTOPHE MERANI,
GLENN LAKEN, AND
JEFFREY COX

Criminal Indictment

No.

**1:22CR283**

Under Seal

THE GRAND JURY CHARGES THAT:

### Background

At all times relevant to the Indictment:

#### *The Defendants*

1.     RAHIM MOHAMED was an individual residing in and around

Calgary, Alberta, Canada.

2.     RICHARD TANG was an individual residing in and around

Richmond, British Columbia, Canada.

3.     DAVIES WONG was an individual residing in and around

Vancouver, British Columbia, Canada.

4.    BREANNE WONG was an individual residing in and around Vancouver, British Columbia, Canada and Panama City, Panama, and is the daughter of Defendant DAVIES WONG.

5.    PHILLIP SEWELL was an individual residing in and around Richmond, British Columbia, Canada.

6.    ZOLTAN NAGY was an individual residing in British Columbia, Canada and Port Roberts, Washington.

7.    CHRISTOPHE MERANI was an individual residing in and around Glendale Heights, Illinois.

8.    GLENN LAKEN was an individual residing in and around Chicago, Illinois.

9.    JEFFREY COX was an individual residing in and around Calgary, Alberta, Canada.

10.    Individual 1 was an individual residing in and around British Columbia, Canada.

### *Relevant Entities*

11.    Lotus Bio-Technology Development Corp. ("Lotus") was a corporation that traded publicly under the ticker symbol LBTD. Before April 2016, Lotus was known as Starflick.com, which Defendant ZOLTAN NAGY incorporated in Nevada in or about 2011 and which traded publicly under the ticker symbol STFK.

12.    Lotus purportedly was a Hong Kong-based bio-technology development company specializing in, among other things, the refining of

2

organic materials and production of natural consumer-related products. However, Lotus never had significant, if any, revenue or operations.

13.     Good Gaming, Inc. ("Good Gaming") was a Pennsylvania company incorporated in or about 2008 that traded publicly under the ticker symbol GMER. Good Gaming purportedly offered an online tournament gaming platform, but it never had significant revenue.

14.     CMG Holdings Group, Inc. ("CMGO") was a Nevada company incorporated under a different name in or about 2004 that purportedly offered marketing communications services. In or about March 2014, CMGO purportedly acquired Good Gaming and later sold Good Gaming in or about February 2016 in exchange for substantial shares of GMER, which made CMGO the controlling shareholder of Good Gaming. Defendant LAKEN served as the Chief Executive Officer, Chief Financial Officer, and Chairman of the Board of Directors of CMGO.

15.     Brokerage Company 1 was a financial services company headquartered in New York that operated an online stock brokerage service. Brokerage Company 1 maintained computer servers located in the Northern District of Georgia that contained customer account databases.

16.     The over-the-counter ("OTC") market is a decentralized trading market in which parties directly trade securities that are not listed on stock exchanges, such as the New York Stock Exchange. Some online brokerage firms support the trading of OTC stocks, which permits their accountholders to buy and sell such stocks.

3

*The Fraudulent Securities Transactions*

17.    Between in or about August 2017 through in or about February 2018, Defendants RAHIM MOHAMED, RICHARD TANG, and other co-conspirators known and unknown to the Grand Jury executed a scheme to manipulate the price of publicly traded companies for their profit. Defendants MOHAMED, TANG, and others conspired to access without authorization customer accounts at multiple U.S.-based online brokerage firms, including Brokerage Company 1.

18.    After gaining access to the compromised customer accounts, Defendants MOHAMED, TANG, and others conspired to force the accounts to buy large quantities of "penny stocks" for which the conspirators controlled a large portion of the publicly available securities and which traded at a very low price with low trading volume. In order to execute those trades, the conspirators often forced the compromised customer accounts to liquidate existing securities holdings to generate proceeds to purchase their targeted stocks.

19.    As a result of the forced trading activity in compromised customer accounts, co-conspirators who held sizable portions of the thinly traded stocks sold their shares at artificially inflated prices during the same time as, or soon after, the forced purchases. Defendants MOHAMED, TANG, and others then divided the trading profits among conspirators in each scheme.

20.    After detecting the price manipulation and confirming with their customers that this trading activity was unauthorized, the online brokerage firm victims restored the compromised customer accounts to their preexisting

4

holdings. As a result, the online brokerage firm victims collectively suffered losses of more than $1 million from the account takeover fraud.

### Count One
### 18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud Relating to Lotus)

21.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20 of this Indictment as if fully set forth herein.

22.     Beginning on a date unknown to the Grand Jury, but from at least in or about October 2015, and continuing through at least on or about September 19, 2017, in the Northern District of Georgia and elsewhere, the Defendants,

RAHIM MOHAMED,
RICHARD TANG,
DAVIES WONG,
BREANNE WONG,
PHILLIP SEWELL,
ZOLTAN NAGY, and
CHRISTOPHE MERANI,

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other, and with others known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and for the purpose of executing such scheme and artifice and to obtain money and property, and attempting to do so, did transmit and cause to be transmitted,

5

by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, namely misappropriated customer account credentials, in violation of Title 18, United States Code, Section 1343.

### Manner and Means of the Conspiracy

23.     It was part of the conspiracy that Defendants RAHIM MOHAMED, RICHARD TANG, DAVIES WONG, BREANNE WONG, PHILLIP SEWELL, ZOLTAN NAGY, and CHRISTOPHE MERANI, and others known and unknown to the Grand Jury, employed the manner and means set forth in paragraphs 17 through 19 of the Indictment and in the following paragraphs to gain unauthorized access to customer accounts at online brokerage firm victims, including Brokerage Company 1, and manipulate the price of Lotus securities.

*Control of LBTD Shares*

24.     After incorporating Lotus in or about 2011, Defendant ZOLTAN NAGY served as an officer and director of Lotus and controlled more than 80% of LBTD shares by in or about September 2015. Defendant NAGY and his co-conspirators thereafter engaged in a series of stock transactions to transfer ownership to Defendants RICHARD TANG, DAVIES WONG, and BREANNE WONG and others and conceal the true ownership of the shares.

25.     In or about 2015, Defendants NAGY and TANG exchanged backdated and fabricated paperwork, including Stock Purchase Agreements and checks, to make it appear that Defendant TANG and his wife purchased millions of LBTD shares in 2013 and 2014. Based on the backdated purchase agreements,

6

Defendant TANG deposited his LBTD shares with a U.S.-based brokerage firm in or about October 2015 while evading reporting requirements under the U.S. Securities and Exchange Commission's beneficial ownership rules.

26.    Between in or about February and April 2016, Defendant RICHARD TANG transferred the bulk of his LBTD holdings to accounts controlled by Defendants DAVIES WONG and BREANNE WONG at offshore brokerage firms. In or about November 30, 2016, Defendant NAGY transferred 50 million shares of LBTD to an entity controlled by Defendant TANG.

27.    In or about early 2017, Defendants DAVIES WONG and BREANNE WONG acquired approximately 2 million additional shares of LBTD and transferred 500,000 shares to Defendant PHILLIP SEWELL.

28.    In or about June 2017, Defendant CHRISTOPHE MERANI opened a brokerage account at a U.S.-based online brokerage firm, and Defendant PHILLIP SEWELL transferred money to fund the brokerage account. Between on or about June 13, 2017 and August 4, 2017, Defendant MERANI's brokerage account purchased approximately 110,000 shares of LBTD stock.

29.    As a result of these transactions, Defendants RICHARD TANG, DAVIES WONG, BREANNE WONG, PHILLIP SEWELL, and CHRISTOPHE MERANI controlled the vast bulk of the outstanding shares of LBTD that were available for public trading by on or about August 1, 2017.

7

*First Account Takeover Manipulation of LBTD*

30.     Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury, gained unauthorized access to login credentials for a customer account at Brokerage Company 1. At least one co-conspirator acting at the direction of Defendant MOHAMED then logged into the customer account using those stolen credentials, thereby misrepresenting by interstate and foreign wire transmission to Brokerage Company 1 servers in the Northern District of Georgia that they were the authorized users of that brokerage account.

31.     After logging into this customer account with stolen credentials, Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury, forced the purchase of 200,000 LBTD shares on or about August 16, 2017 in the compromised customer account at Brokerage Company 1 at a share price that was more than double LBTD's trading price in early August 2017. More than 500,000 shares of LBTD were sold on or about August 16, 2017, which was more than ten times the average daily volume of LBTD transactions in early August 2017.

32.     Defendants DAVIES WONG and BREANNE WONG sold more than 200,000 LBTD shares during the account takeover attack, including executing their largest sale as the direct counterparty to the forced purchase of LBTD shares in the Brokerage Company 1 victim's account.

8

*Second Account Takeover Manipulation of LBTD*

33.      Following the manipulation of LBTD shares in or about August 2017, Defendants RICHARD TANG and ZOLTAN NAGY drafted a corporate resolution and sent paperwork to a transfer agent falsely representing that NAGY was a control person and officer of Lotus and authorizing the issuance of millions of LBTD shares to NAGY.

34.      Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury, gained unauthorized access to login credentials for approximately two-dozen customer accounts at online brokerage firms based in the United States, including customer accounts at Brokerage Company 1. At least one co-conspirator acting at the direction of Defendant MOHAMED then logged into the customer accounts using those credentials, thereby misrepresenting that they were the authorized users of those brokerage accounts.

35.      After logging into these customer accounts with stolen credentials, Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury, forced purchases of millions of LBTD shares on or about September 19, 2017, and LBTD's share price spiked to an intra-day high nearly four times its opening price that day. Approximately 11.5 million shares of LBTD were traded on or about September 19, 2017 after only 400 shares had been traded the previous day.

36.      Defendants DAVIES WONG and BREANNE WONG sold more than 7.5 million shares of LBTD during the account takeover attack. Defendant

CHRISTOPHE MERANI's account sold 30,000 shares of LBTD, including sales executed as the direct counterparty to the forced purchase of LBTD shares in victim brokerage accounts. Defendants RICHARD TANG, BREANNE WONG, and PHILLIP SEWELL placed additional orders to sell LBTD shares during the forced trading activity in customer accounts.

37.    As a result of the Defendants' forced purchases of LBTD shares in victim accounts and sales of their own holdings of LBTD stock, the Defendants and co-conspirators shared approximately $1 million in proceeds from their trades on or about September 19, 2017.

All in violation of Title 18, United States Code, Section 1349.

<div align="center">

**Counts Two through Four**
18 U.S.C. § 1343 and § 2
(Wire Fraud Relating to Lotus)

</div>

38.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20 and 23 through 37 of this Indictment as if fully set forth herein.

39.    On or about the dates listed in Column A of the table below, in the Northern District of Georgia and elsewhere, the Defendants,

<div align="center">

RAHIM MOHAMED,
RICHARD TANG,
DAVIES WONG,
BREANNE WONG,
PHILLIP SEWELL,
ZOLTAN NAGY, and
CHRISTOPHE MERANI,

</div>

aided and abetted by each other, and by others known and unknown to the
Grand Jury, having knowingly devised and intended to devise the
aforementioned scheme and artifice to defraud and to obtain money and
property by means of materially false and fraudulent pretenses, representations,
and promises, and by the omission of material facts, did, with intent to defraud,
transmit and cause to be transmitted, by means of wire communications in
interstate and foreign commerce, certain writings, signs, signals, pictures, and
sounds, that is, logins to customer accounts at Brokerage Company 1 through its
servers located in the Northern District of Georgia to execute the transactions
listed in Column B of the table below, for the purpose of executing and
attempting to execute such scheme and artifice:

| Count | A<br>Date | B<br>Transaction |
|---|---|---|
| 2 | 8/16/2017 | Purchase of approximately 200,000 shares of LBTD in Brokerage Company 1 account ending in x0372 |
| 3 | 9/19/2017 | Purchase of approximately 1,779,000 shares of LBTD in Brokerage Company 1 account ending in x8163 |
| 4 | 9/19/2017 | Purchase of approximately 140,000 shares of LBTD in Brokerage Company 1 account ending in x7031 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

11

**Count Five**
18 U.S.C. § 371
(Conspiracy to Commit Securities Fraud Relating to Lotus)

40.     The Grand Jury re-alleges and incorporates by reference Paragraphs

1 through 20 and 23 through 37 of this Indictment as if fully set forth herein.

41.     Beginning on a date unknown to the Grand Jury, but from at least in

or about October 2015, and continuing through at least on or about September 19,

2017, in the Northern District of Georgia and elsewhere, the Defendants,

RAHIM MOHAMED,
RICHARD TANG,
DAVIES WONG,
BREANNE WONG,
PHILLIP SEWELL,
ZOLTAN NAGY, and
CHRISTOPHE MERANI,

did knowingly and willfully combine, conspire, confederate, agree, and have a

tacit understanding with each other, and with others known and unknown to the

Grand Jury, to use and employ, and cause to be used and employed,

manipulative and deceptive devices and contrivances, in violation of Title 17,

Code of Federal Regulations, Section 240.10b-5, by (a) employing devices,

schemes, and artifices to defraud; (b) making untrue statements of material fact

and omitting to state material facts necessary in order to make the statements

made, in the light of the circumstances under which they were made, not

misleading; and (c) engaging in acts, practices, and courses of business that

would and did operate as a fraud and deceit upon any person, in connection

12

with the purchase and sale of LBTD stock, directly and indirectly, by use of means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Overt Acts

42.    In furtherance of the conspiracy, and to effect the purpose and objects thereof, the Defendants, RAHIM MOHAMED, RICHARD TANG, DAVIES WONG, BREANNE WONG, PHILLIP SEWELL, ZOLTAN NAGY, CHRISTOPHE MERANI, and others committed various overt acts in the Northern District of Georgia and elsewhere, including, but not limited to, the following:

a.    In or about October 2015, Defendant ZOLTAN NAGY conspired with Defendant RICHARD TANG to deposit LBTD shares held in the name of two shell companies, under TANG's control, with a U.S.-based brokerage firm.

b.    On or about February 5, 2016, one of Defendant TANG's entities transferred 10,375,500 shares of LBTD to an account controlled by Defendants DAVIES WONG and BREANNE WONG.

c.    On or about March 30, 2016, one of Defendant TANG's entities entered a Stock Purchase Agreement with Defendant BREANNE WONG, which was drafted in part by Defendant PHILLIP SEWELL. As a result of the

13

agreement, Defendant TANG transferred 3.9 million shares of LBTD to an account controlled by Defendant BREANNE WONG.

d. On or about April 20, 2016, one of Defendant TANG's entities transferred approximately 4.7 million shares of LBTD to an account held for the benefit of Defendants DAVIES WONG and BREANNE WONG.

e. On or about April 3, 2017, Defendant BREANNE WONG transferred 500,000 shares of LBTD to Defendant PHILLIP SEWELL.

f. On or about June 7, 2017, Defendant CHRISTOPHE MERANI opened an account at a U.S.-based online brokerage company. Defendant MERANI funded the account by transferring $10,000, the bulk of what he claimed was his liquid net worth, from his personal bank account.

g. On or about June 14, 2017, Defendant PHILLIP SEWELL sent a wire transfer for $3,000 in funds to Defendant MERANI's personal bank account. On or about June 16, 2017, Defendant SEWELL sent a wire transfer for $2,500 to Defendant MERANI, who subsequently deposited $5,000 in funds from his personal bank account into his online brokerage account.

h. Between on or about June 13, 2017 and on or about August 4, 2017, Defendant MERANI purchased approximately 110,000 shares of LBTD in his online brokerage account, which was the only stock he purchased in that account through on or about September 19, 2017.

i. On a date unknown, but at least by on or about August 16, 2017, at least one co-conspirator acting at the direction of Defendant RAHIM

14

MOHAMED gained unauthorized access to login credentials for a customer account at Brokerage Company 1 ending in 0372.

j.   On or about August 16, 2017, at least one co-conspirator acting at the direction of Defendant RAHIM MOHAMED logged into the customer account ending in 0372 using those stolen credentials and forced an unauthorized purchase of 200,000 shares of LBTD at an inflated price.

k.   On or about the same day, Defendants DAVIES WONG and BREANNE WONG sold approximately 260,999 shares of LBTD, including a substantial number of shares to the compromised customer account ending in 0372.

l.   On or about August 28, 2017, Defendant RICHARD TANG directed a U.S.-based brokerage company where he held 2.5 million shares of LBTD to sell in "perpetuity" because the stock price "will climb."

m.   On or about August 30, 2017, Defendant ZOLTAN NAGY sent a transfer agent signed paperwork falsely indicating that he was a control person of Lotus and authorizing the issuance of 150 million shares of LBTD to him.

n.   On or about September 15, 2017, Defendant TANG directed the U.S.-based brokerage company to begin selling because "[w]e want to be getting some action at a lower price and it's very stagnant."

o.   On or about September 17, 2017, Defendant TANG sent an email to the brokerage firm stating, "Start with 2 or 3k blocks. This is going to

15

have upward momentum since we are the only ones with stock. So minimum blocks up thx!"

p. On or about September 19, 2017, Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury acting at his direction, used stolen login credentials to gain unauthorized access to twenty-four customer accounts at four U.S.-based online brokerage firms, including Brokerage Company 1.

q. On or about the same day, Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury acting at his direction, forced the compromised customer accounts to purchase millions of LBTD shares over approximately four hours, during which LBTD's stock price rose from $0.079 to $0.28 per share.

r. On or about the same day, Defendants DAVIES WONG and BREANNE WONG sold approximately 6,145,600 shares of LBTD held in the name of two companies.

s. On or about the same day, Defendant BREANNE WONG sold almost all of her remaining holdings of LBTD shares, more than 1.6 million shares, held at a Bahamas-based brokerage firm.

t. On or about the same day, Defendant CHRISTOPHE MERANI's brokerage account sold 30,000 shares of LBTD.

All in violation of Title 18, United States Code, Section 371.

16

**Count Six through Eight**
15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2
(Securities Fraud Relating to Lotus)

43.    The Grand Jury re-alleges and incorporates by reference Paragraphs

1 through 20, 23 through 37, and 42 of this Indictment as if fully set forth herein.

44.    On or about the dates listed in Column A of the table below, in the

Northern District of Georgia and elsewhere, the Defendants,

> RAHIM MOHAMED,
> RICHARD TANG,
> DAVIES WONG,
> BREANNE WONG,
> PHILLIP SEWELL,
> ZOLTAN NAGY, and
> CHRISTOPHE MERANI,

aided and abetted by each other, and by others known and unknown to the

Grand Jury, did knowingly and willfully use and employ, and cause to be used

and employed, manipulative and deceptive devices and contrivances, in

violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a)

employing devices, schemes, and artifices to defraud; (b) making untrue

statements of material fact and omitting to state material facts necessary in order

to make the statements made, in the light of the circumstances under which they

were made, not misleading; and (c) engaging in acts, practices, and courses of

business that would and did operate as a fraud and deceit upon any person, in

connection with the purchase and sale of securities, as described in Column B of

17

the table below, directly and indirectly, by use of means and instrumentalities of

interstate commerce, the mails, and facilities of national securities exchanges:

| Count | A<br>Date | B<br>Transaction |
|---|---|---|
| 6 | 8/16/2017 | Purchase of approximately 200,000 shares of LBTD in Brokerage Company 1 account ending in x0372 |
| 7 | 9/19/2017 | Purchase of approximately 1,779,000 shares of LBTD in Brokerage Company 1 account ending in x8163 |
| 8 | 9/19/2017 | Purchase of approximately 140,000 shares of LBTD in Brokerage Company 1 account ending in x7031 |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff;

Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United

States Code, Section 2.

### Count Nine
### 18 U.S.C. § 1349
### (Conspiracy to Commit Wire Fraud Relating to Good Gaming)

45.    The Grand Jury re-alleges and incorporates by reference Paragraphs

1 through 20 of this Indictment as if fully set forth herein.

46.    Beginning on a date unknown to the Grand Jury, but from at least in

or about November 2017, and continuing through at least on or about February

5, 2018, in the Northern District of Georgia and elsewhere, the Defendants,

RAHIM MOHAMED,
RICHARD TANG,
GLENN LAKEN, and
JEFFREY COX,

18

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other, and with others known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and for the purpose of executing such scheme and artifice and to obtain money and property, and attempting to do so, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, namely misappropriated customer account credentials, in violation of Title 18, United States Code, Section 1343.

### Manner and Means of the Conspiracy

47.    It was part of the conspiracy that Defendants RAHIM MOHAMED, RICHARD TANG, GLENN LAKEN, and JEFFREY COX, and others known and unknown to the Grand Jury, employed the manner and means set forth in paragraphs 17 through 19 of the Indictment and in the following paragraphs to gain unauthorized access to customer accounts at online brokerage firm victims, including Brokerage Company 1, and manipulate the price of Good Gaming securities.

#### *Control of GMER Shares*

48.    In or about late 2017, Defendants RICHARD TANG, GLENN LAKEN, and JEFFREY COX conspired to facilitate the sale of millions of GMER shares controlled by Defendant LAKEN by concealing his ownership interest and

19

removing trading restrictions on the shares. On or about January 9, 2018, Defendant LAKEN signed documentation authorizing the transfer of 1.5 million shares of GMER to Defendant COX's offshore brokerage account, and GMER's transfer agent transferred approximately 2.9 million shares of GMER to Defendant COX's account between on or about January 12, 2018 and January 22, 2018.

49.    On or about January 17, 2018, Defendant COX directed his brokerage company to transfer 500,000 shares of GMER to an account held by Individual 1 at the same brokerage company. Defendant COX soon thereafter transferred nearly all of his remaining GMER shares to Individual 1 and granted Defendant RICHARD TANG trading authority over Defendant COX's account. Defendant COX kept approximately 14,200 shares of GMER after the transfers.

50.    As a result of these transactions, the Defendants controlled a substantial portion of the outstanding shares of GMER that were available for public trading by January 20, 2018.

### Account Takeover Manipulation of GMER

51.    In or about January 2018, the Defendants plotted to gain unauthorized access to customer accounts and force purchases of GMER shares to profit from Defendant GLENN LAKEN's controlling interest in the company and discussed an agreement to divide proceeds from their scheme.

52.    Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury acting at his direction, gained unauthorized access to login

20

credentials for customer accounts at online brokerage firms, including customer accounts at Brokerage Company 1. At least one co-conspirator acting at Defendant MOHAMED's direction then logged into the customer accounts using those stolen credentials, thereby misrepresenting by interstate and foreign wire transmission to Brokerage Company 1 servers in the Northern District of Georgia that they were the authorized users of the brokerage accounts.

53.     After logging into this customer account with stolen credentials, Defendant RAHIM MOHAMED, and others known and unknown to the Grand Jury, forced purchases of more than one million shares of GMER on or about January 22, 2018, in the compromised customer accounts at inflated share prices.

54.     During the roughly one-hour period of the account takeover activity, Defendant MOHAMED directed Individual 1 as to the specific prices and quantities of GMER shares to sell, and Individual 1 delivered those instructions to the offshore brokerage company. In total, Individual 1 sold more than 700,000 shares of GMER on or about January 22, 2018, including more than 400,000 shares sold directly to compromised customer accounts.

55.     As a result of the Defendants' forced purchases of GMER shares in victim accounts and sales of their own holdings of GMER stock, the Defendants and co-conspirators shared approximately $170,000 in proceeds from their trades on or about January 22, 2018.

All in violation of Title 18, United States Code, Section 1349.

21

**Counts Ten through Fourteen**
18 U.S.C. § 1343 and § 2
(Wire Fraud Relating to Good Gaming)

56.     The Grand Jury re-alleges and incorporates by reference Paragraphs

1 through 20 and 47 through 55 of this Indictment as if fully set forth herein.

57.     On or about the dates listed in Column A of the table below, in the

Northern District of Georgia and elsewhere, the Defendants,

RAHIM MOHAMED,
RICHARD TANG,
GLENN LAKEN, and
JEFFREY COX,

aided and abetted by each other, and by others known and unknown to the

Grand Jury, having knowingly devised and intended to devise the

aforementioned scheme and artifice to defraud and to obtain money and

property by means of materially false and fraudulent pretenses, representations,

and promises, and by the omission of material facts, did, with intent to defraud,

transmit and cause to be transmitted, by means of wire communications in

interstate and foreign commerce, certain writings, signs, signals, pictures, and

sounds, that is, logins to customer accounts at Brokerage Company 1 through its

servers located in the Northern District of Georgia to execute the transactions

listed in Column B of the table below, for the purpose of executing and

attempting to execute such scheme and artifice:

22

| | A | B |
|---|---|---|
| Count | Date | Transaction |
| 10 | 1/22/2018 | Purchase of approximately 140,000 shares of GMER in Brokerage Company 1 account ending in x0758 |
| 11 | 1/22/2018 | Purchase of approximately 762,000 shares of GMER in Brokerage Company 1 account ending in x6077 |
| 12 | 1/22/2018 | Purchase of approximately 15,000 shares of GMER in Brokerage Company 1 account ending in x3176 |
| 13 | 1/22/2018 | Purchase of approximately 500,000 shares of GMER in Brokerage Company 1 account ending in x0640 |
| 14 | 1/22/2018 | Purchase of approximately 250,000 shares of GMER in Brokerage Company 1 account ending in x6510 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

**Count Fifteen**
18 U.S.C. § 371
(Conspiracy to Commit Securities Fraud Relating to Good Gaming)

58.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20 and 47 through 55 of this Indictment as if fully set forth herein.

59.     Beginning on a date unknown to the Grand Jury, but from at least in or about November 2017, and continuing through at least on or about February 5, 2018, in the Northern District of Georgia and elsewhere, the Defendants,

RAHIM MOHAMED,
RICHARD TANG,
GLENN LAKEN, and
JEFFREY COX,

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other, and with others known and unknown to the

23

Grand Jury, to use and employ, and cause to be used and employed,
manipulative and deceptive devices and contrivances, in violation of Title 17,
Code of Federal Regulations, Section 240.10b-5, by (a) employing devices,
schemes, and artifices to defraud; (b) making untrue statements of material fact
and omitting to state material facts necessary in order to make the statements
made, in the light of the circumstances under which they were made, not
misleading; and (c) engaging in acts, practices, and courses of business that
would and did operate as a fraud and deceit upon any person, in connection
with the purchase and sale of GMER stock, directly and indirectly, by use of
means and instrumentalities of interstate commerce, the mails, and facilities of
national securities exchanges, in violation of Title 15, United States Code,
Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section
240.10b-5.

<div align="center">**Overt Acts**</div>

60.     In furtherance of the conspiracy, and to effect the purpose and
objects thereof, the Defendants, RAHIM MOHAMED, RICHARD TANG,
GLENN LAKEN, and JEFFREY COX, and others committed various overt acts in
the Northern District of Georgia and elsewhere, including, but not limited to, the
following:

a.  On or about November 26, 2017, Defendant RICHARD TANG
emailed Defendant GLENN LAKEN and Defendant JEFFREY COX a proposed

<div align="center">24</div>

agreement between Defendants LAKEN and COX, pursuant to which Defendant COX would act as the "shareholder" for the sale of 20 million shares of GMER.

b. On or about December 10, 2017, Defendant JEFFREY COX sent an email to a Good Gaming executive, copying Defendant RICHARD TANG, in which Defendant COX pledged to "slowly bring our investor group into GMER as we ease out [Defendant LAKEN's] common stock into [their] hands." Defendant COX stated that his services would "bring ongoing support and liquidity to GMER" and that "we can have the stock trading nicely at a much higher level by Christmas."

c. On or about January 9, 2018, Defendant LAKEN signed a stock transfer form authorizing the transfer of 1.5 million shares of GMER from CMGO to Defendant COX. Defendant COX then emailed the transfer form to his offshore brokerage company.

d. On or about the same day, Defendant COX sent Defendants RAHIM MOHAMED and RICHARD TANG a draft message to Defendant LAKEN, which stated that the "net capital" from sales of GMER shares would be "equally divided 50/50 between our group and yours."

e. On or about January 15, 2018, Defendant COX sent Defendant MOHAMED an email with a link to Good Gaming's website, which MOHAMED forwarded to a co-conspirator with the message "We are good to go at 50%."

25

f.  On or about January 17, 2018, Defendant COX emailed his offshore brokerage company a request to transfer 500,000 shares of GMER to Individual 1's account.

g.  On or about January 19, 2018, Defendant COX sent his offshore brokerage company a signed journal request directing the transfer of his remaining shares of GMER to Individual 1's account. Defendant COX also attached a signed trading authorization form granting Defendant TANG authority to trade securities on COX's behalf.

h.  On or about January 21, 2018, Defendant TANG sent an email to Individual 1 and two other individuals with the subject line "Awareness GMER." TANG stated "I need help on GMER. It is for immediate on Monday and Tuesday" and asking for their PayPal account information.

i.  Several hours later, Defendant COX sent an email to Defendant MOHAMED asking "We good for tomorrow?," and MOHAMED responded "Yes we are good!!!!" Defendant COX then sent an email to Defendant TANG stating "Just got a[n] email from Rahim saying he is good to go tomorrow."

j.  Approximately twenty minutes later, Defendant TANG sent an email to Defendant COX, copying Defendant MOHAMED and Individual 1, with the subject line "Re: Gmer." TANG stated that "[Individual 1] and I invested a fair amount of money for a campaign tomorrow" in "reaction to us not having confirmation of rahim doing his thing." But TANG reported that

26

"Today Rahim told [Individual 1] and me that he is getting massive buying." TANG further stated that "Tomorrow [Individual 1] and I hired mega awareness," and "[w]e have communicated to Glen and he is apprised of our efforts and the monies we are putting toward tomorrow through Wednesday." TANG asked COX to complete the journaling of GMER "so that the selling of stock is seamless and uninterrupted," and he instructed COX, MOHAMED and Individual 1 "to coordinate the movement of the stock for the sales to happen."

          k. On or about January 22, 2018, Defendant COX sent an email to his offshore brokerage company, copying Defendant TANG and Individual 1, in which he inquired about the status of his January 19, 2018 request to transfer his remaining shares of GMER to Individual 1's account. Defendant COX asked, "If not already done can we do that this am?"

          l. On a date unknown, but at least by on or about January 22, 2018, a co-conspirator acting at the direction of Defendant RAHIM MOHAMED gained unauthorized access to login credentials for customer accounts at Brokerage Company 1 and another online brokerage company.

          m. On or about January 22, 2018, a co-conspirator acting at the direction of Defendant MOHAMED logged into the customer accounts using those stolen credentials and forced unauthorized purchases of more than one million shares of GMER at inflated prices.

          n. On or about the same day, Individual 1, acting at the direction of Defendant MOHAMED, sold more than 700,000 shares of GMER for nearly

$170,000 in proceeds. Defendant COX also sold his 14,200 shares of GMER at inflated prices.

o. On or about the next day, Defendant TANG sent an email to Defendant MOHAMED and Individual 1 with the subject line "Breakdown." Defendant TANG reported that "715,200 shares were sold" and credited MOHAMED with the sales of 515,688 shares. TANG proposed that more than $60,000 would be paid for "third party services," paying "Glen $55,000," and splitting the remaining proceeds among Defendants TANG, MOHAMED, and Individual 1.

p. On or about February 5, 2018, Individual 1 distributed proceeds from the sales of GMER to Defendants MOHAMED, TANG, and LAKEN.

All in violation of Title 18, United States Code, Section 371.

**Count Sixteen through Twenty**
15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2
(Securities Fraud Relating to Good Gaming)

61. The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 20, 47 through 55, and 60 of this Indictment as if fully set forth herein.

62. On or about the dates listed in Column A of the table below, in the Northern District of Georgia and elsewhere, the Defendants,

RAHIM MOHAMED,
RICHARD TANG,
GLENN LAKEN, and

JEFFREY COX,

aided and abetted by each other, and by others known and unknown to the

Grand Jury, did knowingly and willfully use and employ, and cause to be used

and employed, manipulative and deceptive devices and contrivances, in

violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a)

employing devices, schemes, and artifices to defraud; (b) making untrue

statements of material fact and omitting to state material facts necessary in order

to make the statements made, in the light of the circumstances under which they

were made, not misleading; and (c) engaging in acts, practices, and courses of

business that would and did operate as a fraud and deceit upon any person, in

connection with the purchase and sale of securities, as described in Column B of

the table below, directly and indirectly, by use of means and instrumentalities of

interstate commerce, the mails, and facilities of national securities exchanges.

| | A | B |
|---|---|---|
| Count | Date | Transaction |
| 16 | 1/22/2018 | Purchase of approximately 140,000 shares of GMER in Brokerage Company 1 account ending in x0758 |
| 17 | 1/22/2018 | Purchase of approximately 762,000 shares of GMER in Brokerage Company 1 account ending in x6077 |
| 18 | 1/22/2018 | Purchase of approximately 15,000 shares of GMER in Brokerage Company 1 account ending in x3176 |
| 19 | 1/22/2018 | Purchase of approximately 500,000 shares of GMER in Brokerage Company 1 account ending in x0640 |
| 20 | 1/22/2018 | Purchase of approximately 250,000 shares of GMER in Brokerage Company 1 account ending in x6510 |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

### Forfeiture

63.    Upon conviction of one or more of the offenses alleged in Counts One through Eight of this Indictment, the defendants, RAHIM MOHAMED, RICHARD TANG, DAVIES WONG, BREANNE WONG, PHILLIP SEWELL, ZOLTAN NAGY, and CHRISTOPHE MERANI, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.  The property to be forfeited includes the following:

> a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Eight of this Indictment.

64.    Upon conviction of one or more of the offenses alleged in Counts Nine through Twenty of this Indictment, the defendants, RAHIM MOHAMED, RICHARD TANG, GLENN LAKEN, and JEFFREY COX, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.  The property to be forfeited includes the following:

30

   a. MONEY JUDGMENT: A sum of money in United States currency,

      representing the amount of proceeds obtained as a result of the

      offenses alleged in Counts Nine through Twenty of this Indictment.

65.    If, as a result of any act or omission of the defendant, any property

subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be

      subdivided without difficulty;

the United States of America intends, pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c)

and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable property.

A _____ **BILL**

FOREPERSON

RYAN K. BUCHANAN
*United States Attorney*

NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930

31

TAL C. CHAIKEN
*Assistant United States Attorney*
Georgia Bar No. 273949

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

32

# EXHIBIT B

AO 442 (12/85) Warrant for Arrest

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA,

vs.

GLENN LAKEN

**AGENT TO ARREST**

**WARRANT FOR ARREST**

CASE NO.  1:22-CR-283-8
**UNDER SEAL**

To:   The United States Marshal
      and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest GLENN LAKEN and bring him or her forthwith to the nearest magistrate to answer a(n)

☒ Indictment      ☐ Information      ☐ Complaint      ☐ Order of Court      ☐ Violation Notice      ☐ Probation Violation Petition

Charging him or her with (brief description of offense):  Conspiracy to Commit Wire Fraud Relating to Good Gaming

in violation of **Title 18, United States Code, Section(s) 1349.**

KEVIN P. WEIMER
Name of Issuing Officer

C. Mercado
Signature of Issuing Officer

Clerk, U.S. District Court
Title of Issuing Officer

August 10, 2022  at  Atlanta, Georgia
Date and Location

Bail Fixed at  $_____

By:_____
          Name of Judicial Officer

# RETURN

This warrant was received and executed with the arrest of the above-named defendant at:

Date Received:   _____

Date of Arrest:   _____

_____
Name and Title of Arresting Officer

_____
Signature of Arresting Officer

## CLASS II WARRANT INFORMATION SHEET

**NOTE:** Deliver all original arrest warrants to U.S. Marshal, N/GA only. The Clerk shall not issue copies of arrest warrants, whether certified or not, to any law enforcement agency. Any law enforcement agency in need of copies shall obtain them from the U.S. Marshals' Office.

**Identifying Data of Defendant:**

NAME: Glenn Laken

ALIAS:

ADDRESS:

SEX: Male

RACE: White

HEIGHT: 6'2

WEIGHT: 180

DOB: 2/20/1954

SSN#: 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

FBI#: 898998W9

AGENCY: Federal Bureau of Investigation

    AGENT: Chip Cromer

    AGENT EMAIL: wcromer@fbi.gov

    AGENT CONTACT #: 770-216-3092

AUSA: Nathan P. Kitchens

**\*All executed arrest warrants shall be returned to the U.S. Marshal**